## SANDSTONE SPRING WATER COMPANY v. KETTLE RIVER COMPANY.[1]

July 25, 1913.

Nos. 18,118—(150).

**Pollution of spring — evidence — damages.**

In an action to recover damages to the plaintiff's property through the pollution of a spring by the waste product of the defendant's creosoting plant, it is *held:*

(1) That the evidence justifies the finding of the court that the plaintiff's spring was polluted by the waste product of the defendant's creosoting plant through the breaking of its sewer.

(2) That the evidence justifies the award of damages made.

(3) That the court did not err in refusing the additional findings proposed by the defendant.

(4) That the court did not err in denying the defendant's motion for a new trial upon the ground of newly discovered evidence.

[1] Reported in 142 N. W. 885.

Action to recover $112,000 for the pollution of plaintiff's spring. The case was tried in the district court for Hennepin county before Hale, J., who made findings and ordered judgment for $31,339.50 in favor of plaintiff. Defendant's motion to amend the findings of fact was denied. From an order denying defendant's motion for a new trial, it appealed. Affirmed.

*Jesse Van Valkenburg* and *Cobb, Wheelwright & Dille,* for appellant.

*Cohen, Atwater & Shaw* and *M. H. Boutelle,* for respondent.

DIBELL, C.

The plaintiff owns a spring at Sandstone, in Pine county. The defendant owns a creosoting plant there. This action is brought by the plaintiff against the defendant to recover damages to the spring through the alleged pollution of its waters by the creosoting plant. A jury was waived. The court found for the plaintiff and fixed its damages at the sum of $31,339.50, $25,000 representing the difference in value of the spring before and after the pollution, and $6,339.50 representing the value of improvements used in connection with the spring and made worthless by its pollution.

1. The defendant's spring is situate close to a creek locally known as Skunk creek. For some time the defendant used this creek for carrying off the by-products and waste of its creosoting plant. After the purchase of the spring by the plaintiff, and upon its protest against such use of the creek, the defendant constructed a sewer to carry the waste of its plant and ceased using the creek. In February, 1911, this sewer broke, so the claim is, and the creosote waste accumulated, and thereafter by seepage or otherwise contaminated the sources of the spring, whereby it was rendered worthless. The evidence is conclusive that the creosote product got into the spring. The claim of the defendant is that it came from the creek, and that it was caused to seep through when the spring was pumped.

The finding of the court that the spring was polluted by the creosote waste from the sewer is supported by the evidence.

2. The evidence was directed largely to the value of the spring and assumed a wide scope.

The evidence tends to show that the waters of the spring were of unusual purity and excellence and especially adapted to profitable use for domestic consumption and in commercial lines.

The local surroundings were bad. Two slaughter-houses had found their outlet in the creek. The creek was the outlet for the Great Northern yards. The waste of the creosoting plant had discharged into it for a long period. The waters of the creek were always subject to pollution and contamination. There was a public cemetery near by.

There was a close contest as to whether the spring was a surface spring or a deep-water spring, and whether it was about to dry up or had a permanent flow.

There was direct testimony as to the value of the spring before pollution. Some witnesses put its value at amounts ranging from $75,000 to $200,000; others said it was worthless.

Upon the evidence before the court, the question of value was largely one of estimate or judgment. The evidence would sustain a finding that the spring was of little or no value, or that its value was in excess of that found.

3. The defendant proposed additional findings upon some 75 points. They were evidentiary in character. There were three general issues in the case, the ownership of the spring property, its pollution by the defendant, and the damage done. The case might have been disposed of neatly by specific findings upon these three issues. There are cases where a party is entitled to findings more specific than the ultimate facts pleaded. We do not see in this case error in the refusal of the court to find as asked by the defendant.

4. There was no error in denying the defendant's motion for a new trial upon the ground of newly discovered evidence. The facts desired to be proved are corroborative of the evidence of certain of the defendant's witnesses tending to show that the spring was a shallow one constantly diminishing in flow.

The nature of the case, and the amount of the recovery, are such as to invite a careful scrutiny of the record. All of the evidence has been gone over in detail, in connection with the thoroughly prepared

and helpful briefs of counsel. The case had the painstaking attention of the trial court.

The two determining questions are the two first discussed, namely, whether the sewer polluted the spring, and, if so, the damage done. These questions are questions of fact. The evidence was conflicting. It supports the findings of the trial court.

Order affirmed.